IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-03238-REB-MEH

WHISPERING PIINES WEST CONDOMINIUM HOMEOWNERS ASSOCIATION, INC.,

     Plaintiff,

v.

CERTAIN UNDERWRITERS AT LLOYD'S, LONDON,

     Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

     Defendant seeks an order compelling Plaintiff to arbitrate its claim for violation of Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116. Mot. to Dismiss and Compel Arbitration, ECF 11. Plaintiff counters that the scope of the arbitration provision between the parties does not encompass its statutory claim. For the reasons that follow, the Court recommends that the Honorable Robert E. Blackburn grant the motion and dismiss this case.

### BACKGROUND

     The Plaintiff initiated this action on September 30, 2019 in the 2nd Judicial District Court for the City and County of Denver, Colorado, seeking "to enforce its rights under C.R.S. §§ 10-3-1115 and 1116 in response to [Defendant's] unreasonable delays and denials of benefits owed under the applicable insurance certificate." Compl. ¶ 1, ECF 5. Specifically, Plaintiff alleges Defendant failed to respond reasonably to Plaintiff's claim for insurance benefits based on damage to its property from a hailstorm on July 15, 2016. *See id.* ¶¶ 8-25.

     Defendant removed the action to this Court on November 15, 2019, and filed the present

motion in response to the Complaint on November 21, 2019.  ECF 1, 11.  Defendant contends that

the subject insurance policy contains an arbitration provision requiring that the parties arbitrate

disagreements "regarding any aspect of the Policy."   Plaintiff counters that the arbitration

provision's language is narrow and, thus, collateral matters, such as whether Defendant violated

Colorado statutory law, are not subject to the provision's requirement to arbitrate.  Defendant replies

that Plaintiff fails to demonstrate the scope of the arbitration provision is narrow, and that prevailing

case law demonstrates the wide breadth of the provision and its application to Plaintiff's statutory

claim.

## LEGAL STANDARDS

Issues of arbitrability are governed by the Federal Arbitration Act ("FAA").  *Belnap v. Iasis*

*Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017).  Under the FAA, when parties agree to resolve

a controversy by arbitration, courts must enforce that agreement "save upon such grounds as exist

at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Such grounds include

"generally applicable contract defenses, such as fraud, duress, or unconscionability."  *Rent-A-*

*Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517

U.S. 681, 687 (1996)).

Whether to enforce an arbitration agreement involves a two-step inquiry. *Mitsubishi Motors*

*Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985).  First, the court must determine

whether the parties agreed to arbitrate the dispute.  *Id.* at 626. Second, the court must analyze

whether a statue or policy renders the claims nonarbitrable. *Id.* at 628. "There is a strong federal

policy favoring arbitration for dispute resolution." *Coors Brewing Co. v. Molson Breweries*, 51 F.3d

1511, 1514 (10th Cir. 1995) (quoting *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 465

(10th Cir. 1988)). Therefore, if there is uncertainty as to whether a claim is arbitrable, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Id.* (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2–124 v. American Oil Co.*, 528 F.2d 252, 254 (10th Cir. 1976)).

The question of who should decide arbitrability is a threshold issue. *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th Cir. 2012) ("The Court should have begun its analysis by asking whether the parties did or said anything to rebut the presumption that questions about the arbitrability of an arbitration dispute will be resolved by the courts."). Just as parties can agree to arbitrate the merits of a dispute, they can agree to arbitrate arbitrability—*i.e.* the validity and scope of an arbitration provision. *Rent-A-Center, W., Inc.*, 561 U.S. at 69 ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."). Here, no party argues that they agreed to arbitrate arbitrability, and the Court finds nothing in the arbitration provision delegating the issue of arbitrability to an arbitrator. Thus, the Court will proceed to address the issue. *See Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005) ("Where, as here, the parties dispute 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy, [the question] is for the court.'" (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002))).

## ANALYSIS

Arbitration is a contractual matter; parties cannot be required to submit to arbitration any dispute they have not contractually agreed to submit. *AT & T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986); *see also Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995). Only claims having "a reasonable factual connection to the contract" are

arbitrable.  *Coors Brewing Co.*, 51 F.3d at 1516; *see also E.E.O.C. v. Waffle House, Inc.*, 534 U.S.

279, 289 (2002) ("Absent some ambiguity in the agreement [ ] it is the language of the contract that

defines the scope of disputes subject to arbitration")).  When analyzing whether the parties agreed

to submit a specific dispute to arbitration, "[a]ll 'doubts are to be resolved in favor of arbitrability.'"

*Coors Brewing Co.*, 51 F.3d at 1514 (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-*

*124*, 528 F.2d at 254).

The Tenth Circuit has instructed that courts addressing whether a particular dispute falls

within the scope of an agreement's arbitration clause "should undertake a three-part inquiry":

> First, recognizing there is some range in the breadth of arbitration clauses, a court
> should classify the particular clause as either broad or narrow. Next, if reviewing a
> narrow clause, the court must determine whether the dispute is over an issue that is
> on its face within the purview of the clause, or over a collateral issue that is
> somehow connected to the main agreement that contains the arbitration clause.
> *Where the arbitration clause is narrow, a collateral matter will generally be ruled*
> *beyond its purview.* Where the arbitration clause is broad, there arises a presumption
> of arbitrability and arbitration of even a collateral matter will be ordered if the claim
> alleged implicates issues of contract construction or the parties' rights and obligations
> under it.

*Cummings*, 404 F.3d at 1261 (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading*

*Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)) (emphasis in original).

Paragraph 12 of the "Conditions" section of the Equinox Insurance Certificate issued by

Defendant to Plaintiff for the period September 25, 2015 to September 25, 2016 ("Policy") is titled

"Arbitration" and provides in relevant part:

> If the Assured and Underwriters *fail to agree in whole or in part regarding any*
> *aspect of this Policy*, each party shall, within ten (10) days after the demand in
> writing by either party, appoint a competent and disinterested arbitrator and the two
> chosen shall before commencing the arbitration select a competent and disinterested
> umpire. The arbitrators together shall determine such matters in which the Assured
> and Underwriters shall so fail to agree and shall make an award thereon, and if they
> fail to agree, they will submit their differences to the umpire and the award in writing

of any two, duly verified, shall determine the same.

Policy, ECF 11-1 at 13 (emphasis added). Plaintiff asserts that the language, "regarding any aspect of this Policy," is narrow and does not encompass its claims that Defendant delayed or denied benefits in violation of Colo. Rev. Stat. §§ 1115 and 1116.[1] Defendant counters that Plaintiff's "statutory claims would not exist without the contractual relationship between these parties established by the Policy. Thus, those claims qualify as a disagreement 'regarding' the Policy." Reply 2. The Court agrees with Defendant.

Plaintiff contends that "regarding any aspect of this Policy" is narrower than the following language found to be broad by the Tenth Circuit and courts in this district: "arising out of" the subject agreement, "in connection with" the agreement, and "relating to" the agreement. However, the Court finds persuasive the Colorado Supreme Court's opinion in *City & Cty. of Denver v. Dist. Court In & For City & Cty. of Denver*, 939 P.2d 1353, 1366 (Colo. 1997) (en banc), in which the court addressed whether the term "disputes regarding the contract" was broad or restrictive. The court found that the term was "similar" to the term "relating to the contract," which had been found by other courts to be broad. *See id.* In addition, the court held:

> Webster's Third New International Dictionary (3d ed. 1986) confirms that regarding has the same or similar meaning as relating (regarding means "with respect to; concerning," *id.* at 1911; concerning means "related to; regarding," *id.* at 470; related means "having a relationship or connected by an established or discoverable relation," *id.* at 1916; and arises means "to originate from a specific source as in 'arising out of,'" *id.* at 117). Hence, we follow the reasoning of the court of appeals in *Kiewit* [*Western Co. v. City & Cty. of Denver*, 902 P.2d 421, 424 (Colo. App.

---

[1]The Court notes that, although potentially applicable due to the nature of the , Plaintiff does not invoke the "effective vindication exception" to the Federal Arbitration Act, which provides that a court may invalidate, on public policy grounds, arbitration agreements that operate as a prospective waiver of a party's right to pursue statutory remedies. *See Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376-77 (10th Cir. 2016).

1994)] and hold that the ADR clause of this Contract is a broad clause intended by the parties to encompass any dispute between PCL and Denver regarding the subject matter of the Contract, that is, the work necessary to construct the terminal building at DIA.

*Id.* Applying the Colorado Supreme Court's analysis to this case, the Court finds that the term "regarding," as defined by Merriam-Webster, means "with respect to; concerning" (https://www.merriam-webster.com/dictionary/regarding, last visited March 4, 2020); and "concerning" is defined as "relating to; regarding" (https://www.merriam-webster.com/dictionary/concerning, last visited March 4, 2020). The Tenth Circuit, when determining whether the language of an arbitration provision is broad or narrow, has determined that the term "arising out of or relating to" is broad.[2] *See, e.g., Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1059 (10th Cir. 2018) (". . . this court previously held 'arising out of or relating to' is 'broad' language.") (citing *Chelsea Family Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009) and *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999)). The Court finds that the term "regarding" is sufficiently similar to "relating to" to be considered broad for purposes of a *Cummings* analysis.

Next, the Court must determine whether the broad scope of the arbitration provision here encompasses the Plaintiff's statutory claims. "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *See*

---

[2]The Court notes that, if the term at issue were instead "arising out of *and* relating to," this Court's analysis would be different, in that the scope of the provision would be based on both "arise" (or, to originate from a source) and "relate" (to have relationship or connection) and, thus, would have a narrower focus. *See* https://www.merriam-webster.com/dictionary/arise and https://www.merriam-webster.com/dictionary/relate, last visited March 4, 2020.

*supra* at 4 (quoting *Cummings*, 404 F.3d at 1261). Plaintiff contends that "none of the allegations triggering liability asserted in the Complaint under Colorado's Unreasonable Delay/Denial statute, C.R.S. §§ 10-3-1115 and 1116, regard 'any aspect of the Policy' and thus those potential statutory liabilities are not encompassed in the arbitration proceeding." Resp. 2-3. Plaintiff cites *Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185-86 (Colo. 2018) for the proposition that "the elements that will determine liability under the . . . Statute are not the same as, nor even relevant to a breach of contract claim under the Policy." *Id.* at 3. The Court is not persuaded.

In *Barriga*, the Colorado Supreme Court was asked "to consider only whether the court of appeals erred in holding that an award under section 10-3-1116(1) should not be reduced by the amount of unreasonably delayed benefits." *Id.* at 1183. The portion of the decision cited by Plaintiff addresses whether permitting recovery both under a breach-of-contract claim and a claim under section 10-3-1116(1) contravenes Colorado's general rule against double recovery for the same injuries. *Id.* at 1185. The court noted that the rule prohibits double recovery for the "same wrong," which is determined by considering whether the facts of each claim are "factually separable" or "identical." *Id.* The court concluded that "a claim for breach of contract and a claim for unreasonable delay or denial of insurance benefits rely on two different sets of facts," and thus, "the two claims do not return an award for the same wrong." *Id.* at 1186.

Nothing in *Barriga* nor in any other case cited by the Plaintiff holds that a statutory claim having "separable" facts from a contract claim cannot fall within the scope of a broad arbitration provision. Rather, the Court must ask: does the challenged claim "implicate issues of contract construction or the parties' rights and obligations under it"?

In its Complaint, Plaintiff alleges, "Underwriters has unreasonably delayed payment to

Whispering Pines West. Measured against objective industry standards for claim handling and payment, Underwriters['] actions have unreasonably delayed payment of the loss and damage." Compl. ¶ 29. Plaintiff then lists the following "unfair claim settlement practices leading to unreasonable delay and/or denial of benefits":

> (a) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the insurance policy. Underwriters delayed responding and providing relevant and material information related to adjusting the loss and claim, unreasonably delaying the resolution of Whispering Pines West's claim;
>
> (b) Underwriters unreasonably delayed investigation and determination of the amount of Whispering Pines West's loss through inappropriately using experts and consultants to investigate the loss that blatantly refused to consider the indemnity standards of the coverage grant of the policy and were oriented to prefer the interests of Underwriters in minimizing its obligations to provide benefits in accordance with the Policy;
>
> (c) Underwriters engaged in unfair claim handling practices unreasonably delaying payment, including refusing to accept and act on the duly submitted, proper in form Sworn Statement in Proof of Loss submitted on behalf of Whispering Pines West, forcing Whispering Pines West to engage counsel and thereby incur costs to obtain performance promised under the Policy;
>
> (d) Underwriters engaged in unfair claim handling practices unreasonably delaying and denying payment of benefits to Whispering Pines West by directing its representatives to assert adjusting and coverage positions that lacked a good faith basis in the Policy and were intended to coerce compromises from its Assured; [and]
>
> (e) Underwriters engaged in unfair claim handling practices unreasonably delaying payment by refusing to pay Whispering Pines West's claim without conducting a reasonable investigation based upon all available information, and directing its representatives to disregard material information supplied during the course of adjusting, with the consequence of delaying and/or denying benefits to the detriment of its Assured.

*Id.* ¶ 30. These allegations demonstrate that the Plaintiff's claim implicates the parties' rights and obligations under the Policy, including the Plaintiff's entitlement to benefits, the notification and proof of loss, the investigation and adjusting of the claim, the scope of coverage for a claim, and the

payment of benefits. The Court concludes that, even if the alleged unreasonable delay or denial of benefits claim is considered a matter collateral to whether Defendant breached the Policy issued to Plaintiff, the presumption of arbitrability applies here, and the Court finds the statutory claim should proceed to arbitration. Thus, the Court respectfully recommends that Senior Judge Blackburn grant Defendant's motion and order the Plaintiff's statutory claim to arbitration.

Notably, the Defendant seeks dismissal rather than a stay of the action pending arbitration. Of course, the sole claim in this case is Plaintiff's statutory claim; accordingly, the Court finds no basis on which to stay the matter (*see* 9 U.S.C. § 3) and will recommend that the case be dismissed.

## CONCLUSION

The arbitration provision at issue here contains broad language and, thus, the presumption of arbitrability applies. This Court finds the allegations supporting Plaintiff's statutory claim implicate the parties' rights and obligations under the subject Policy and, thus, the claim falls within the scope of the arbitration provision. Because the statutory claim is the sole claim in this action, the Court also recommends that the case be dismissed. Accordingly, the Court respectfully **recommends** that Defendants' Motion to Dismiss and Compel Arbitration [filed November 21, 2019; ECF 11] be **granted**.[3]

---

[3] Be advised that all parties shall have fourteen days after service to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are

Entered and dated at Denver, Colorado, this 6th day of March, 2020.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).